UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IDA SIEGFRIED, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:16 CV 1942 CDP |
| | ) |
| BOEHRINGER INGELHEIM | ) |
| PHARMACEUTICALS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Eight Missouri plaintiffs joined eighty-six non-Missouri plaintiffs to sue Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") and its corporate parent company, Boehringer Ingelheim International GmbH ("BII"), in Missouri state court. All plaintiffs contend that they were injured by taking defendants' anti-clotting drug Pradaxa, and all their claims are brought under Missouri tort law. Defendants removed the case to federal court, asserting diversity jurisdiction even though three of the plaintiffs shared Connecticut citizenship with one of the defendants. Defendants seek dismissal of the claims of all non-Missouri plaintiffs for lack of personal jurisdiction. Plaintiffs seek remand of the case to state court.

The court will exercise its discretion to examine personal jurisdiction before subject matter jurisdiction in this case. Based on recent rulings from both the United States and Missouri Supreme Courts, I conclude that Missouri lacks

personal jurisdiction over these corporate defendants for claims brought by the non-Missouri plaintiffs. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, No. 16-466, 2017 WL 2621322 (U.S. June 19, 2017); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41(Mo. 2017) (en banc). The claims of the eighty-six non-Missouri plaintiffs will be dismissed. Complete diversity exists between the remaining parties, so the motion to remand will be denied.

## Background

On October 10, 2016, ninety-four[1] plaintiffs filed their first amended petition in the City of St. Louis Circuit Court, seeking personal injury damages for bleeding events that were allegedly caused by their use of Pradaxa. Plaintiffs state that "their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and fact" relating to defendants' "research, designing, testing, formulating, inspecting, labeling, manufacturing, packaging, marketing, distributing, producing, processing, promoting, and selling of the pharmaceutical drug known as Pradaxa." ECF No. 14 at ¶ 1.

Eight of the ninety-four plaintiffs are citizens of the state of Missouri. Only these eight Missouri plaintiffs allege that they were prescribed and took the drug Pradaxa in Missouri and subsequently suffered a bleeding event in Missouri. None of the other eighty-six plaintiffs allege that they were prescribed Pradaxa in

---

[1] In the original petition filed in Missouri state court on September 26, 2016, there were ninety-six named plaintiffs; however, the first amended petition named only ninety-four plaintiffs.

Missouri, that they suffered any resulting injuries in Missouri, or that they received treatment for any injuries in Missouri.

Three of the ninety-four plaintiffs are citizens of the state of Connecticut. Defendant BIPI is a Delaware corporation with its principal place of business in Connecticut. BIPI has a registered agent and is licensed to do business in the state of Missouri. BII is a German corporation with its headquarters in Germany. Plaintiffs allege that defendants have "conducted and continue to conduct continuous and systematic business in the State of Missouri, have purposefully injected their products, including Pradaxa, into the stream of commerce to be sold in Missouri, and have taken actions such that they should anticipate being sued in the State of Missouri." ECF No. 14 at ¶ 101. According to plaintiffs, the defendants transacted business and committed torts in whole or in part in Missouri – including the marketing and selling of Pradaxa – that gave rise to this cause of action as a whole. *Id*.

## Discussion

### A. Removal and Diversity Jurisdiction

Removal in this case was premised on diversity jurisdiction, which requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. 28 U.S.C. § 1332(a). It is undisputed that the amount in controversy exceeds $75,000.

Because three plaintiffs are citizens of the state of Connecticut, as is defendant BIPI, complete diversity is lacking. BIPI argues, however, that all of the non-Missouri plaintiffs' claims were fraudulently joined and therefore should be ignored for purposes of determining diversity jurisdiction. According to BIPI, this court will have federal jurisdiction over the claims of the Missouri citizen plaintiffs once the eighty-six non-Missouri plaintiffs (including the three diversity-destroying Connecticut plaintiffs) are dismissed for lack of personal jurisdiction. Plaintiffs respond that the court should examine subject-matter jurisdiction before personal jurisdiction, and should remand this action to state court.

## B. Discretion on Order of Jurisdictional Issues

There is no "unyielding jurisdictional hierarchy" concerning the order in which a federal court must consider challenges to personal jurisdiction and subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). In exercising discretion to determine which issue to consider first, courts should consider the interests of judicial economy, weigh the preclusionary effect of ruling on an issue that could travel back and bind the state court, and decide the more straightforward issue first. *Id*. at 585-86. The Supreme Court in *Ruhrgas* acknowledged that "in most instances subject-matter jurisdiction will involve no arduous inquiry" and "[i]n such cases, both expedition and sensitivity to state

courts' coequal stature should impel the federal court to dispose of that issue first." *Id*. at 587-88.

Plaintiffs argue that the more straightforward issue here is subject-matter jurisdiction. This is consistent with the holdings of many cases from this district over the past few years.[2] But recent decisions by the United States and Missouri Supreme Courts make the personal jurisdiction issue in this case much easier to decide. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, No. 16-466, 2017 WL 2621322 (U.S. June 19, 2017); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41(Mo. 2017) (en banc). Remanding this case for lack of complete diversity, only to have the case removed again later once the non-Missouri plaintiffs are dismissed, would be a waste of judicial resources. In addition, inquiring into personal jurisdiction first means the Court need not decide the joinder issues, which are complicated, especially in light of *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010).

---

[2] *See T.R. v. Janssen Pharm., Inc.*, No. 4:16-CV-1860 CEJ, 2017 WL 492827, at *3 (E.D. Mo. Feb. 7, 2017); *McPeters v. Bayer Corp.*, No. 4:16-CV-1680 SPM, 2017 WL 57250 (E.D. Mo. Jan. 5, 2017); *Dotson v. Bayer Corp.*, 4:16-CV-1593 PLC, 2017 WL 35706 (E.D. Mo. Jan. 4, 2017); *Spann v. Boehringer Ingelheim Pharm., Inc.*, No. 4:16-CV-902 RLW, 2016 WL 7243535 (E.D. Mo. Dec. 14, 2016); *Mounce v. Bayer Corp.*, No. 4:16-CV-1478 RLW, 2016 WL 7235707 (E.D. Mo. Dec. 13, 2016); *Dorman v. Bayer Corp.*, No. 4:16-CV-601 HEA, 2016 WL 7033765 (E.D. Mo. Dec. 2, 2016); *Fahnestock v. Boehringer Ingelheim Pharm., Inc.*, No. 4:16-CV-1013 CEJ, 2016 WL 4397971 (E.D. Mo. Aug. 18, 2016); *Timms v. Johnson & Johnson*, No. 4:16-CV-733 JAR, 2016 WL 3667982 (E.D. Mo. July 11, 2016); *Joseph v. Combe Inc.*, No. 4:16-CV-284 RLW, 2016 WL 3339387 (E.D. Mo. June 13, 2016); *Nickerson v. Janssen Pharm., Inc.*, No. 4:15-CV-1762 RLW, 2016 WL 3030241 (E.D. Mo. May 26, 2016); *Clark v. Pfizer, Inc.*, No. 4:15-CV-546 HEA, 2015 WL 4648019 (E.D. Mo. Aug. 5, 2015); *Parker v. Pfizer, Inc.*, No. 4:15-CV-441 CAS, 2015 WL 3971169 (E.D. Mo. June 30, 2015).

Personal jurisdiction is now the more straightforward inquiry. Ruling personal jurisdiction first is in the interests of judicial economy and expeditiousness. *See also Addelson v. Sanofi*, No. 4:16-CV-1277 ERW, 2016 WL 6216124 (E.D. Mo. Oct. 25, 2016) (personal jurisdiction is the more straightforward issue and should be addressed first); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F.Supp.3d 1040 (N.D. Ill. 2016) (personal jurisdiction is more straightforward and less complex than subject-matter jurisdiction).

### C. Rule 12(b)(2) Motion to Dismiss

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support a "reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). I must view the evidence in a light most favorable to the plaintiffs and resolve factual conflicts in the plaintiffs' favor; however, plaintiffs carry the burden of proof and that burden does not shift to defendants. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

### D. Personal Jurisdiction

#### a. General and Specific Jurisdiction

In order to subject a defendant to a court's personal jurisdiction, due process requires that the defendant have certain minimum contacts with the state, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014). General, or "all-purpose," jurisdiction exists over a corporation when the forum state is its place of incorporation or the location of its principal place of business. *Id*. at 751, 754; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). However, in an "exceptional case," an additional state could have general jurisdiction if the corporation's activities in that state are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761 n.19. Neither defendant in this case is incorporated in Missouri, nor does either have its principal place of business in the state. Nor are their activities in the state substantial enough to make them "at home" here. *Id*.

Specific, or "conduct-linked," jurisdiction involves suits "arising out of or related to the defendant's contacts with the forum." *Daimler*, 134 S.Ct. at 751; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

For a Missouri court to exercise specific jurisdiction over an out-of-state defendant, two requirements must be met: 1) jurisdiction must be allowed by the Missouri long-arm statute; and 2) the reach of the long-arm statute must comport with due process. *Viasystems, Inc. v. EBM-Papst St. George Gmbh & Co.*, 646 F.3d 589, 593-94 (8th Cir. 2011). Missouri's long-arm statute authorizes, *inter alia*, personal jurisdiction over corporate defendants who, either in person or through an agent, transact business or commit a tort within the state. Mo. Rev. Stat. § 506.500.1(1), (3).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). In other words, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 1122 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Contacts between the plaintiff and the forum state do not satisfy this inquiry. *Id.* The proper focus regarding minimum contacts necessary to create specific jurisdiction is on "the relationship among the defendant, the forum, and the litigation." *Id.* at 1121.

Plaintiffs here assert that this court has specific jurisdiction over all defendants for all plaintiffs' claims. They argue that defendants' tortious conduct gave rise to this cause of action as a whole and defendants' contacts with Missouri

constitute part of the same series of transactions for all plaintiffs. These contacts with Missouri include marketing, promoting, and selling Pradaxa in the state. It is undisputed that the same marketing and promotional activities took place throughout the United States. The non-Missouri plaintiffs, however, were not prescribed Pradaxa here, nor did they purchase the drug, suffer an injury, or receive treatment in Missouri.

In *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, No. 16-466, 2017 WL 2621322 (U.S. June 19, 2017), more than 600 plaintiffs brought suit in California state court against pharmaceutical company defendant BMS, alleging damage to their health from the drug Plavix. Eighty-six of the plaintiffs were California residents and the remaining 592 plaintiffs were residents of 33 other states. *Id.* at *3-4. BMS was incorporated in Delaware with substantial operations in New York and New Jersey. The non-California plaintiffs did not allege that they obtained Plavix in California, suffered injury in California, or received treatment for their injuries in California. BMS sold Plavix in California and engaged in some business activities within the state, including running five research laboratory facilities which employed around 160 employees, employing around 250 sales representatives, maintaining a small advocacy office, and contracting with a California company for the distribution of Plavix on a nationwide basis. *Id.* at *3-4, *10. BMS, however, did not do any research or

development leading to Plavix, create its marketing strategy, or work on regulatory approval of Plavix in California. *Id*. at *4. The California Supreme Court found that California courts had specific jurisdiction over BMS for the nonresident plaintiffs' claims because of BMS's extensive contacts with California and the similarity of the claims brought by the resident and nonresident plaintiffs. *Id*. at *5.

The Supreme Court reversed, finding that the California court's exercise of jurisdiction over BMS violated due process. *Id*. at *6-11. In a "straightforward application" of the "settled principles of personal jurisdiction," the Court focused on the need for an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id*. at *11, *7 (quoting *Goodyear*, 564 U.S. at 919). The Court reiterated that it is not enough for a defendant to have general connections with the forum – there must be a connection between the forum and the specific claims at issue. *Id*. at *8. The Court found the connection between the California forum and the nonresident plaintiffs too weak for a California court to claim specific jurisdiction. *Id*. at *9.

A few months before the Supreme Court's ruling in *Bristol-Myers Squibb*, the Missouri Supreme Court considered a similar issue in *State ex rel. Norfolk Southern Railway Co. v. Dolan*, 512 S.W.3d 41(Mo. 2017) (en banc). In *Norfolk Southern*, the Missouri court concluded that there was neither general nor specific

jurisdiction over defendant Norfolk, a Virginia corporation, when Norfolk was sued for personal injuries in Missouri by an Indiana-resident plaintiff, where the injuries occurred in Indiana and resulted from plaintiff's work for the railway in Indiana. *Id*. at 44-46. Before turning to the argument that the Federal Employers' Liability Act (FELA) conferred personal jurisdiction, the Missouri court applied the *Daimler* principles underlying general and specific jurisdiction. There was no personal jurisdiction in Missouri because the railroad was not at home in Missouri and the plaintiff's personal injury did not arise out of, or relate to, Norfolk's activities in Missouri. *Id*. at 49. The court also rejected plaintiff's arguments that FELA provided a basis for personal jurisdiction. *Id.* at 50. Not long after that Missouri decision, the United States Supreme Court reached the same conclusion in holding that FELA does not provide a basis for personal jurisdiction over a railroad wherever it has tracks. *BNSF Railway Co. v. Tyrrell*, 137 S.Ct. 1549 (2017).

Just as in *Bristol-Myers Squibb*, defendants here market and sell their pharmaceutical drug in the forum state, but the nonresident plaintiffs did not ingest the drug in the forum, nor do they claim to have suffered resulting injuries in the forum. The personal injuries of the non-Missouri plaintiffs have no connection with Missouri. They did not arise out of, or relate to, defendants' activities in Missouri. The Missouri long-arm statute limits a state court's jurisdiction over a

– 11 –

defendant to only causes of actions that arise from the acts enumerated in the statute – i.e. business transacted and torts committed *within the state of Missouri*. Mo. Rev. Stat. § 506.500.3 (emphasis added). Defendants' activities in Missouri and connections with the state do not meet the state long-arm requirements or the due process requirements of the Fourteenth Amendment.

Plaintiffs argue that because defendants' actions are sufficient to confer jurisdiction over them for the Missouri plaintiffs' claims, jurisdiction should extend to claims of nonresident plaintiffs that are based on the same conduct. But both the United States Supreme Court and the Missouri Supreme Court rejected the argument that personal jurisdiction could be asserted merely because a defendant treated nonresidents in the same way it treated plaintiffs in the forum state, or because nonresident and resident plaintiffs made similar claims based on similar injuries. The Missouri court noted that this argument "would be to turn specific jurisdiction on its head. There would never be a need to discuss general jurisdiction, for every state would have specific jurisdiction over every national business corporation." *Norfolk Southern,* 512 S.W.3d at 49. The U.S. Supreme Court said, "Our cases provide no support for this approach, which resembles a loose and spurious form of general jurisdiction." *Bristol-Myers Squibb*, 2017 WL 2621322, at *8.

### b. Consent to Jurisdiction by Registration

Plaintiffs also assert that Missouri courts possess an additional, independent basis for personal jurisdiction over BIPI: consent jurisdiction based on BIPI's registration to do business in the state of Missouri and its maintenance of an agent in the state to accept service of process.[3] The U.S. Supreme Court in *BNSF* declined to consider this argument as it had not been considered by the Montana Supreme Court, 137 S.Ct. at 1559, and the Court did not mention the argument in *Bristol-Myers Squibb.* The Missouri Supreme Court in *Norfolk Southern*, however, explicitly considered the argument and rejected it. 512 S.W.3d at 51-53. In that case defendant Norfolk, just like BIPI here, had registered to do business with the state of Missouri and had designated an agent to receive service of process in the state. The Missouri Supreme Court found that "[t]he plain language of Missouri's registration statutes does not mention consent to personal jurisdiction for unrelated claims, nor does it purport to provide an independent basis for jurisdiction over foreign corporations that register in Missouri." *Id*. at 52. The registration statute does not broaden "Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present." *Id*. The court explicitly stated that its holding in *Norfolk Southern*

---

[3] Plaintiffs' argument concerning consent jurisdiction only applies to defendant BIPI. Plaintiffs do not allege in their amended petition that defendant BII is licensed to do business in Missouri, nor do they allege that it maintains a registered agent in the state.

overruled earlier cases that suggested otherwise. *Id*. at 52-53. Compliance with Missouri's registration statute does not confer personal jurisdiction over BIPI.

## Conclusion

Based on *Bristol-Myers Squibb* and *Norfolk Southern*, neither this Court nor the Missouri state court from which this case was removed can exercise personal jurisdiction over these defendants for the claims brought by the eighty-six non-Missouri plaintiffs. The nonresident plaintiffs' claims cannot satisfy either Missouri's long-arm statute or the Due Process Clause, and BIPI's registration to do business in Missouri does not constitute consent to jurisdiction. I will grant defendants' motion to dismiss the claims of the eighty-six non-Missouri plaintiffs. As complete diversity of citizenship exists between the defendants and the remaining eight Missouri-citizen plaintiffs, I will deny plaintiffs' motion to remand.

Accordingly,

**IT IS HEREBY ORDERED** that defendant BIPI's amended motion to dismiss for lack of jurisdiction [15] is **GRANTED**. The claims of all plaintiffs other than Ida Siegfried, Georgianna Horn, David Kirk, Elneides Minner, Herman Standifer, Sandra Campbell, Sharon Cohen, and Melvin McGuire are dismissed without prejudice for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that plaintiffs' motion to remand to state court [11] is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file notice of supplemental authority [25] is **GRANTED**, and defendant BIPI's original motion to dismiss for lack of jurisdiction [4] is **DENIED** as moot.

This case will be set for a Rule 16 Scheduling Conference by separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2017.